## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**VIVIAN BANKS, <u>for</u> <u>herself</u> <u>and</u> <u>for</u>**          :
<u>her</u> <u>minor</u> <u>child</u>, **L.F.,**                          :
       **Plaintiffs**                               :          **No. 1:14-cv-01191**
                                                     :
**v.**                                                        :
                                                     :          **(Judge Kane)**
**CITY OF YORK, <u>et</u> <u>al.</u>,**                        :
       **Defendants**                              :

## <u>MEMORANDUM</u>

Before the Court are Defendants School District of the City of York, Principal Darlene

Freeman, and Jim Rauhauser's (together the "School Defendants") motion to dismiss (Doc. No.

15), and Defendants City of York, Officer Rich Kehler, and Police Chief Wes Kahley's (together

the "City Defendants") motion to dismiss (Doc. No. 19), Plaintiffs' complaint (Doc. No. 1).  For

the reasons that follow, the Court will grant in part and deny in part the School Defendants'

motion, grant in part and deny in part the City Defendants' motion, and dismiss Plaintiffs'

complaint in part.

## I.  BACKGROUND[1]

Plaintiffs Vivian Banks and her daughter L.F. allege that the Defendant Police Officer

Kehler deployed a taser at L.F. at her school, causing compensable injuries and violating L.F.'s

constitutional rights.  (Doc. No. 1 ¶ 38.)  In December 2012, Plaintiff L.F. was 16 years old and

enrolled at Lindbergh Academy in York, Pennsylvania.  (<u>Id.</u> ¶ 12.)  Because of her involvement

as a witness in an unrelated criminal prosecution, Plaintiff L.F. and her mother, Plaintiff Vivian

---

[1] The following background is taken directly from the allegations from Plaintiffs'
complaint (Doc. No. 1), accepted as true for the limited purposes of these motions to dismiss.

Banks, met with Lindbergh Academy Principal Darlene Freeman on December 1, 2012 to discuss L.F.'s safety at school. (Id. ¶¶ 6, 15.) At that meeting, Principal Freeman agreed to grant L.F. an exception to the general school rule prohibiting student possession of cellular telephones and to allow L.F. to carry a cellular telephone on her person while at the school. (Id. ¶¶ 16-17.) Days later, L.F. used the device to show a picture to a school employee, after which another school employee, Defendant Jim Rauhauser, demanded that she turn over the cellular telephone, because he was unaware of Principal Freeman's decision and believed that L.F. was not allowed to possess the phone at school. (Id. ¶ 16-17.) L.F. refused to surrender the telephone, and she "became angry that [Defendant Rauhauser] would not listen to her explanation[,] and the argument became heated." (Id.) Both the school counselor and the principal were nearby, but neither intervened to stop the escalating exchange. (Id.)

Defendant Rauhauser then summoned Defendant Police Officer Rick Kehler, who was on duty at a nearby school. (Id. ¶ 18.) Officer Kehler arrived and insisted that L.F. leave school grounds, but she did not comply at first, instead attempting to explain again that she was allowed to have the cellular telephone at school. (Id. ¶ 19.) The dispute between Officer Kehler and L.F. intensified, and eventually Officer Kehler tried to "forcibly remove" L.F. from the school. (Id. ¶ 20.) After physically freeing herself, L.F. walked towards an exit, apparently complying with Officer Kehler's instruction. (Id.) "Kehler walked next to her and said something which [L.F.] did not understand, as [L.F.] turned towards Kehler's voice, he activated a taser, employing it against her torso." (Id.) After he subdued L.F. with the taser, and while she remained immobilized on the ground, Officer Kehler placed L.F. in handcuffs. (Id. ¶ 21.)

L.F. claims that she has suffered physical and emotional injuries as a result of the

incident.  (Id.)  Plaintiffs allege that Officer Kehler's conduct resulted from poor or nonexistent

training or supervision on the part of Defendants Police Chief Wes Kahley and the City of York.

(Id. ¶¶ 25-27.)  Plaintiffs also allege that the School Defendants are liable, because they claim

that Principal Freeman had a duty to inform her employees that L.F. was allowed to possess the

cellular phone, and that her failure to do so caused L.F.'s injuries.  (Id. ¶ 34.)

Plaintiffs initiated the above-captioned action by filing a federal complaint on June 19,

2014. (Doc. No. 1.)  All defendants executed waivers of service, and the School Defendants filed

their joint motion to dismiss on September 8, 2014.  (Doc. No. 15.)  The City Defendants filed

their joint motion to dismiss on September 22, 2014.  (Doc. No. 19.)  Plaintiffs' complaint raises

claims under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution

via 42 U.S.C. § 1983 in addition to claims under Pennsylvania constitutional and tort provisions.[2]

---

[2] Plaintiffs' complaint includes six counts:

| | |
|---|---|
| Count I: | Generic Section 1983 claim against all defendants |
| Count II: | Section 1983 "Excessive Force and Physical Brutality" claim against Defendant Officer Kehler in his individual and official capacities |
| Count III: | Section 1983 supervisory liability claim against Defendants Police Chief Kahley and the City of York |
| Count IV: | Section 1983 municipal liability claim against the City of York |
| Count V: | State constitutional claims against all defendants |
| Count VI: | State law negligence against all defendants |

Plaintiffs have not opposed dismissal of their Section 1983 Eighth Amendment claims, found presumably in Count I and possibly in Counts III and IV of their complaint.  (Doc. No. 26 at 7.)  Nor have Plaintiffs opposed dismissal of Plaintiff Vivian Banks' individual claims.  (Doc. No. 22 at 12.)  Plaintiffs also concede that their Count VI state law negligence claims are barred by the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa. Stat. §§ 8541-8564 (Doc. Nos. 22 at 11; 26 at 8.)  Accordingly, the Court will dismiss those claims with prejudice.

## II.    LEGAL STANDARD

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests.  Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008).  The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief.  Fed. R. Civ. P. 8(a).  Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted."  See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff.  See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  The Court's inquiry is guided by the standards of Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009).  Under Twombly and Iqbal, pleading requirements have shifted to a "more heightened form of pleading."  See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible.  Id.  Accordingly, to determine the sufficiency of a complaint under Twombly and Iqbal, the United States Court of Appeals for the Third Circuit has identified the following steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and

(3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement for relief."  See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

## III.    DISCUSSION

This memorandum addresses challenges to Plaintiffs' complaint in the following order: (A) Plaintiffs' generic Section 1983 claim(s) from Count I; (B) Plaintiffs' Section 1983 Fourth Amendment claim for unlawful arrest; (C) Plaintiffs' Section 1983 municipal liability claim from Count IV; (D) Plaintiffs' claims against the individual defendants in their official capacities; (E) Plaintiffs' Section 1983 supervisory liability claim from Count III; (F) Plaintiffs' state constitutional claims from Count V; and (G) punitive damages.

### A.    General Section 1983 claim

Count I of Plaintiffs' complaint raises a Section 1983 claim against all defendants.  (Doc. No. 1 at 9.)  This count lays out the basic elements of a Section 1983 claim: Defendants acted under color of state law (id. ¶ 40), and Defendants deprived Plaintiffs of "various federal Constitutional rights," (id. ¶ 41).  The count does not specify which rights have been violated. (See id. at 9.)

Section 1983 provides an avenue of redress for those deprived of federal rights by persons acting under color of state law.  42 U.S.C. § 1983.  Section 1983 allows victims of constitutional torts to recover monetary damages from the state actors who caused their injury. See Carey v. Piphus, 435 U.S. 247, 255 (1978).  However, Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred."  Albright v. Oliver, 510 U.S. 266, 271 (1994) (internal quotations omitted); see also

id. at 288 n.2 (Souter, J., concurring) (discussing Section 1983 claims arising from violations of Fourth, Eighth, and Fourteenth Amendment rights) (citing Graham v. Connor, 490 U.S. 386, 394 (1989)).  As a result, Section 1983 plaintiffs must ultimately establish that defendants acted under color of state law under Section 1983 and must show that the defendants' actions caused a deprivation of the specific underlying constitutional right.  Baker, 443 U.S. at 140-141.

Count I of Plaintiffs' complaint describes the threshold elements of Section 1983 but makes no reference to any particular substantive constitutional right.  (Doc. No. 1 ¶¶ 39-42.) The Complaint goes on to state a more specific Section 1983 claim in Count II for Fourth Amendment excessive force.  (Id. ¶¶ 43-53.)  While Plaintiffs' statement of jurisdiction and venue alludes to the Fourth, Eighth, and Fourteenth Amendments, the Count I Section 1983 claim against all defendants rests generically on violations of "various federal Constitutional rights."  (Id. ¶¶ 9, 39-42, 44.)  Defendants have addressed several claims that they have found in the complaint, including false arrest (Doc. No. 21 at 5), and substantive due process[3] (Doc. No. 15 ¶ 5(g)), even though it is not at all clear that these claims are those Plaintiffs intended to bring.  Federal Rule of Civil Procedure 8(a)(2) requires a "short and plain statement showing that the pleader is entitled to relief," and in the first instance, Plaintiffs must make clear the nature of their theories of recovery and against whom they assert them.  See Fed. R. Civ. P. 8(a)(2). Therefore, to the extent that Plaintiffs seek to bring general claims under Section 1983, those

---

[3] Plaintiffs acknowledge that their Fourteenth Amendment claims "are brought to pursue [their] Fourth and Eighth Amendment claims," and not to raise a substantive due process theory. (Doc. Nos. 22 at 10; 26 at 7.)  Accordingly, the Court will dismiss Plaintiffs' Fourteenth Amendment claims.  See Albright v. Oliver, 510 U.S. 266, 288-89 (1994) (Souter, J., concurring) ("[T]he Court has resisted relying on the Due Process Clause when doing so would have duplicated protection that a more specific constitutional provision already bestowed.").

claims will be dismissed.  In addition, if Plaintiffs attempt to bring Section 1983 claims other than those addressed herein, Plaintiffs shall re-plead them with greater specificity in an amended complaint.

> **B.    Section 1983 Fourth Amendment Claim – False Arrest**

The City Defendants construe Plaintiffs' complaint as bringing a false arrest claim.[4] (Doc. No. 21 at 5-8.)  The complaint never expressly alleges that Defendant Officer Kehler falsely arrested Plaintiff, but the complaint does seek "[c]ompensatory damages for loss of liberty during wrongful arrest, seizure, and confinement."  (See Doc. No. 1 ¶ 37(b)).  Plaintiffs' opposition brief only tangentially addresses the issue: "Plaintiff's position is that there was no need or cause[,] probable or otherwise to arrest [L.F.] nor did Kehler ever announce that she was under arrest or attempt to place her under arrest until after he applied the taser to her person without warning or provocation."  (Doc. No. 26 at 6.)  Plaintiffs also allege elsewhere in their complaint that L.F. "did not commit any criminal offense," that she did not "pose a threat to Kehler or anyone else," and that she did not "threaten to assault or assault anyone."  (Doc. No. 1 ¶¶ 22-24.)  From the complaint's narrative, it is not clear that L.F. was ever placed under formal arrest for any offense, only that Officer Kehler "placed handcuffs on [L.F.] while she was immobilized and paralyzed from the use of the taser."  (Doc. No. 1 ¶ 21.)

The Fourth Amendment protects individuals from unreasonable searches and seizures, including false arrests.  Whren v. United States, 517 U.S. 806, 809 (1996).  "[A] warrantless

---

[4] The City Defendants do not seek dismissal of Count II of the complaint – the Fourth Amendment excessive force claim against Defendant Officer Kehler – at this time.  (Doc. Nos. 15, 19.)  Accordingly, the Court has no occasion to address that claim in this memorandum, and it will not be dismissed.

arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." Dravenpeck v. Alford, 543 U.S. 146, 152 (2004).  The probable cause inquiry is objective: while the facts known to the arresting officer are relevant, the officer's genuine subjective motivation for making the arrest is immaterial. Id. at 152-153.  Further, probable cause as to any offense, not necessarily the offense for which the individual is later charged or for which the individual is under suspicion, operates as a complete defense to a Section 1983 false arrest claim. Id. at 155-156; Startzell v. City of Phila., 533 F.3d 183, 203-204 (3d Cir. 2008).  Probable cause is ordinarily a question for a jury in Section 1983 cases, but in unusual circumstances when "the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding, [a court] may enter . . . judgment accordingly." Estate of Smith v. Marasco, 318 F.3d 497, 514 (3d Cir. 2003).

Defendants have argued that Officer Kehler had probable cause to arrest L.F. for defiant trespass, disorderly conduct, or harassment.  (Doc. No. 21 at 5.)  Under Pennsylvania law, an individual commits defiant trespass if, inter alia, he or she "enters or remains in any place as to which notice against trespass given by . . . (v) an actual communication to the actor to leave school grounds as communicated by a school, center or program official, employee or agent or a law enforcement officer." 18 Pa. Stat. § 3503(b)(1).  An individual commits harassment when he or she "with intent to harass, annoy or alarm another . . . strikes, shoves, kicks or otherwise subjects the other person to physical contact, or attempts or threatens to do the same . . . ." 18 Pa. Stat. § 2709(a).  In addition, in relevant part, "[a] person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he [or she] . . . engages in fighting or threatening, or in violent or tumultuous behavior . .

8

. . ." 18 Pa. Stat. § 5503.

According to Plaintiffs' complaint, "Kehler arrived at the school and confronted [L.F.] and told her to leave school premises. [L.F.] again tried to explain why she was permitted to possess the phone . . . . Kehler initiated contact with [L.F.] to try and forcibly remove her from the school grounds." (Doc. No. 1 ¶¶ 19-20.)  L.F. freed herself from Kehler's grip, turned, and began walking away from him towards another exit, apparently now in compliance with his instruction to leave.  (Id. ¶ 20.)  During the episode, L.F. believed "that there was no reason for her to have to leave the school as she had not done anything wrong."  (Id. ¶ 19.)

At this stage in these proceedings, the Court cannot find, as Defendants urge, that probable cause existed to arrest L.F., at least for the offenses Defendants have put forth in their briefing.  "Probable cause determinations are necessarily fact-intensive," United States v. Conley, 4 F.3d 1200, 1204 (3d Cir. 1993), and without more facts than those presently before it, the Court cannot make a definitive finding that probable cause existed.  It is not clear from the amended complaint that L.F. was formally arrested, nor is the length of her detention clearly elucidated.  However, Plaintiffs have alleged that L.F. was behaving lawfully and was in the process of complying with Officer Kehler's order to leave when she was detained.  (Doc. No. 1 ¶ 20.)  While further factual development may establish the existence of probable cause, its existence is not plain from the face of the complaint.  To the extent that they bring one, Plaintiffs will ultimately need to prove a lack of probable cause to prevail on their false arrest claim, but at this early stage in the litigation, the Court cannot find, as Defendants argue, that probable cause existed at the time Officer Kehler detained L.F.  Accordingly, the Court will not dismiss Plaintiffs' complaint on this ground.

### C.      Plaintiffs' municipal liability claim

Count IV of Plaintiffs' complaint brings a Section 1983 claim against the City of York on a theory of municipal liability.  (Doc. No. 1 ¶¶ 57-63.)  Plaintiffs believe that "[i]t was the policy of the City to inadequately and improperly screen during the hiring process and to inadequately train and supervise its police officers thereby failing to [adequately] protect persons within the City from having their federal rights violated by the City's police officers."  (Id. ¶ 59.)  As a result of the City's alleged failures, Plaintiffs seek monetary damages from the municipality for their injuries.

Section 1983 plaintiffs may recover from municipalities in very limited circumstances. Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658, 690-92 (1978).  A city is only liable when a city official whose "acts may fairly be said to represent official policy" adopts a custom or policy that then causes a constitutional violation.  Id. at 693.  Municipalities cannot be held liable under Section 1983, "unless deliberate action attributable to the municipality itself is the moving force behind the plaintiff's deprivation of federal rights."  Board of County Comm'rs of Bryan County, Okla. v. Brown, 520 U.S. 397, 400 (1997) (emphasis in original) (quotations omitted).  Such deliberate conduct may be shown through a council vote, agency action, or similar enactment, or a city may be liable for a "custom" that has obtained the force of law "by virtue of the persistent practices of state [or local] officials."  Adickes v. S. H. Kress & Co., 398 U.S. 144, 167 (1970).  Though "it may seem contrary to common sense," municipal liability may be based on a failure to train police officers, because a city may "actually have a policy of not taking reasonable steps to train its employees."  City of Canton v. Harris, 489 U.S. 378, 390 (1989) (emphasis added).  In limited circumstances, a city may also be liable for its hiring

policies or customs, <u>Bryan County</u>, 520 U.S. at 410, as well as its employee supervision policies

or customs, <u>Thomas v. Cumberland County</u>, 749 F.3d 217, 222-223 (3d Cir. 2014).  The United

States Court of Appeals for the Third Circuit has described the "substantive elements" of a

municipal liability theory as (1) a custom or policy of inadequate training, supervision, or hiring;

(2) the municipality's deliberate indifference to that inadequacy; and (3) a causal nexus between

the inadequacy and the constitutional deprivation.  See <u>Reitz v. County of Bucks</u>, 125 F.3d 139,

145 (3d Cir. 1997); <u>Kneipp v. Tedder</u>, 95 F.3d 1199, 1213 (3d Cir. 1996).

In moving to dismiss Plaintiffs' municipal liability claim against the City of York, the

City Defendants argue that Plaintiffs have failed to make out two of the general requirements of

any municipal liability claim: the existence of a custom or practice, and action with deliberate

indifference.  In determining whether Plaintiffs have stated a municipal liability claim, the Court

first assesses the sufficiency of Plaintiffs' allegations regarding the existence of a custom or

policy of inadequate training, supervision, or hiring.  The Court next assesses the sufficiency of

Plaintiffs' allegations of deliberate indifference, and then addresses the necessity of pleading the

deprivation of a specific federal right in a municipal liability claim.

### 1.    Custom or policy

According to Plaintiffs' complaint, the City of York was "aware or should have been

aware from prior incidents involving the use of taser weapons by members of [its] Department

that additional training and instruction were necessary in the use of taser weapons by [its police

officers] before they were equipped with weapons."  (Doc. No. 1 ¶ 27.)  In addition, Plaintiffs

allege that the City of York "had policies, procedures, rules, regulations and or customs that

permitted the use of excessive force by its officers when such force was not called for under the

circumstances." (Doc. No. 1 ¶ 32.)  Alternatively, Plaintiffs allege, the City "had policies,

procedures, rules, regulation or customs that prohibited the use of excessive force . . . [but] those

policies, procedures, rules, regulations and or customs were inadequate or not enforced by" the

City.  (Id. ¶ 33.)

　　Plaintiffs asserting municipal liability claims face "a two-path track to municipal liability,

depending on whether a [Section] 1983 claim is premised on a municipal policy or custom."

McTernan v. City of York, 564 F.3d 636, 657-58 (3d Cir. 2009) (citations omitted).  For a

"policy," a city is liable under Section 1983 when its decisionmakers, endowed with municipal

authority, affirmatively adopt a policy like a deficient police training program that then causes a

constitutional deprivation.  See Adickes, 398 U.S. at 167.  For a "custom," a city may be liable

under Section 1983 for constitutional deprivations caused by municipal practice "even though

such a custom has not received formal approval through the body's official decisionmaking

channels."  Monell, 436 U.S. at 690-91.  "A course of conduct is considered to be a 'custom'

when, though not authorized by law, 'such practices of state officials [are] so permanently and

well-settled' as to virtually constitute law."  McTernan, 564 F.3d at 658 (quoting Andrews v.

City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990)).

　　The Court finds that Plaintiffs have failed to plead with sufficient particularity the

existence of a custom or policy of inadequate training, supervision, or hiring.  Federal Rule of

Civil Procedure 8 requires only a "short and plain statement" to survive a motion to dismiss, but

under modern pleading standards, "[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678

(2009).  Plaintiffs' complaint, while hewing to the literal requirements of a municipal liability

claim, contains no factual allegations to substantiate the complaint's assertions.  For example,

Plaintiffs allege that the City had a policy or custom "that permitted the use of excessive force by

its police officers," but beyond that assertion, they provide no hint as to what the nature of that

policy or custom could be.  (See Doc. No. 1 ¶ 32.)  Nor does the complaint contain sufficient

factual matter to differentiate between Plaintiffs' claims predicated on the City's hiring and

screening practices, training practices, or supervision practices.  (See id. ¶¶ 59-62.)

Consequently, the Court will dismiss Plaintiffs' complaint on this basis.

### 2. Deliberate indifference

Plaintiffs use the phrase "deliberate indifference" to describe the customs or policies that

they attribute to the City of York.  (See e.g., Doc. No. 1 ¶ 63.)  Elsewhere in their complaint,

Plaintiffs describe the City as "negligent" for failing to ensure that its employees were properly

trained in the use of force.  (Id. ¶¶ 30-31.)  Plaintiffs also assert that "the City of York [was]

aware or should have been aware from prior incidences involving the use of taser weapons" that

the City's police officers were improperly trained.  (Id. ¶ 27.)

A Section 1983 plaintiff seeking to impose liability on a municipality must plead that the

municipality acted with "deliberate indifference" in adopting a custom or policy that then caused

a constitutional deprivation.  Collins v. City of Harker Heights, Tex., 503 U.S. 115, 124 (1992).

Deliberate indifference is a very high standard to meet, requiring at the pleading stage that a

plaintiff make a plausible factual allegation that a municipal actor disregarded the known or

obvious consequences of his or her actions.  See Board of County Comm'rs of Bryan County,

Okla. v. Brown, 520 U.S. 397, 410 (1997).  To establish deliberate indifference in a municipal

liability action, a plaintiff is ordinarily required to plead a pattern of constitutional violations that

are both similar to the plaintiff's own alleged injury and attributable to the policy or custom in question.[5]  Connick v. Thompson, 131 S. Ct. 1350, 1360 (2011); Bryan County, 520 U.S. at 412-415; Berg v. County of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000).  In the ordinary case, a pattern of violations is necessary to show that the policymakers knew of their custom or policy's deficiency, knew of their custom or policy's propensity to cause constitutional harm, and yet deliberately took no curative action.  Connick, 131 S.Ct. at 1361.

The Court finds that Plaintiffs have not adequately pled deliberate indifference.  Plaintiffs have not alleged facts demonstrating that the City authorities acted with deliberate indifference to their custom or policy, whatever it may have been.  Plaintiffs mention "prior incidents," but they offer no further description of those incidents or how the City authorities reacted to them. (See Doc. No. 1 ¶ 27.)  In short, Plaintiffs again have offered a literal description of their claims' elements, but without such factual specificity as might bring their claims from conceivable to plausible.  See Twombly, 550 U.S. at 547.  Consequently, the Court will dismiss Plaintiffs' municipal liability claims without prejudice on this basis as well.

### 3.      Necessity of pleading a specific deprivation

The Court observes that Plaintiffs do not specify in their complaint which constitutional deprivations they attribute to failures to train, hire, or supervise.  (See Doc. No. 1 ¶¶ 54-63.)

---

[5] The Supreme Court has hypothesized that deliberate indifference may be shown absent a pattern of violations in very limited situations.  City of Canton, 489 U.S. 378, 390 n.10 (1989). For the so-called single incident theory to apply, the city's policymakers must "know to a moral certainty" that the specific constitutional deprivation will occur as a result of the city's custom or policy.  Id.  Normally, the requisite pattern of violations puts policymakers on notice that their custom or policy is inadequate, but in single-incident cases the policy's deficiency is so obvious and the likelihood of constitutional harm is so great, that notice to the policymakers may be assumed.  See Connick, 131 S.Ct. at 1361.  As Plaintiffs' complaint alleges the existence of "prior incidents," they do not appear to rely on the single incident theory.

However, a plaintiff lodging a Section 1983 complaint for supervisory or municipal liability must establish both the Section 1983 general requirements for municipal or supervisory liability (e.g., a custom or practice, deliberate indifference), and the deprivation of the specific federally protected right (e.g., violation of the Eighth Amendment protection from cruel and unusual punishment).  Accordingly, it is also incumbent upon Plaintiffs to identify which federal right has been infringed and link that deprivation to supervisory or municipal conduct.  Plaintiffs have failed to do so with sufficient specificity here, so Plaintiffs' claims for supervisory and municipal liability will be dismissed without prejudice on that basis in addition to the pleading deficiencies discussed above.[6]

## D.  Official capacity claim

Plaintiffs complaint brings claims against four individuals: Officer Rich Kehler, Police Chief Wes Kahley, Principal Darlene Freeman, and Jim Rauhauser.[7]  (Doc. No. 1 at 1.)  The complaint alleges that each acted "within the scope of his [/her] authority."  (Id. ¶¶ 3, 4, 6, 7.) Plaintiffs bring an excessive force claims against Defendant Officer Kehler in both his official and individual capacities and claims against Defendants Freeman and Rauhauser in each's

---

[6] The School Defendants extrapolated a municipal liability claim against the School District from Plaintiffs' generic Section 1983 claim in Count I of the complaint.  (Doc. No. 15 ¶ 5(a).)  The Court finds no specific claim for municipal liability against the school district in the balance of the complaint, but Plaintiffs concede that the complaint "could have been more specific with regard to its claims against the District," and they request permission to amend their complaint for this claim.  (Doc. No. 22 at 7.)  Accordingly, to the extent Plaintiffs bring a municipal liability claim against the school district, that claim will also be dismissed without prejudice.

[7] The supervisory liability claim against Defendant Police Chief Kahley is discussed below in Part III(E), while the claim against Defendant Officer Kehler is not before the Court on these motions.

official capacity as an employee of the school district.  (See id. at 9.)  Both sets of defendants

seek dismissal of all official capacity claims as redundant of those claims against the institutions.

(Doc. Nos. 15 ¶ 5(b); 19 ¶¶ 21-22.)

      A claim against a public official in his or her official capacity "generally represent[s]

another way of pleading an action against an entity of which an officer is an agent." Kentucky v.

Graham, 473 U.S. 159, 165-66 (1985) (quoting Monell v. New York City Dep't of Sec. Servs.,

436 U.S. 658, 690 n.55 (1978)).  In an official capacity claim, a plaintiff sues based on a

constitutional deprivation caused by the enforcement of the defendant government entity's

custom or practice.  Hafer v. Melo, 502 U.S. 21, 25 (1991).  When a plaintiff raises a personal

capacity claim, however, "it is enough to show that the official, acting under color of state law,

caused the deprivation of a federal right."  Id.  Defendants in either case may be immune from

suit; an official capacity defendant may assert the same immunities available to his or her

government employer, whereas an individual capacity defendant may avail himself or herself of

common law immunities.  Id.  Because of the duplication in official capacity suits, district courts

routinely dismiss "redundant [Section] 1983 claims asserted against public officers in their

official capacities where a claim has also been made against the public entity that employs

them."  See e.g., Foglesong v. Somerset County, No. 13-77, 2013 WL 795064, at *9 (W.D. Pa.

March 4, 2013) (collecting cases).  These claims are more likely to survive dismissal where

plaintiffs' claims against the defendant also include claims against the defendant in his or her

individual capacity, or when dismissal of the official claims would not streamline litigation.  See

e.g., Capresecco v. Jenkintown Borough, 261 F. Supp. 2d 319, 322 (E.D. Pa. 2003).

      In the present case, Plaintiffs bring an explicit individual capacity claim against

Defendant Officer Kehler, and although Plaintiffs do not label it as such, the supervisory liability claim against Defendant Chief Kahley is also an individual capacity claim.  (See Doc. No. 1 ¶¶ 43-53.)  Plaintiffs have also brought claims against the government entities that employ the remaining individual defendants.  (Id. at 1.)  The Court will not dismiss any claims against Defendant Officer Kehler in his official capacity, because it is not clear from the factual allegations in the complaint whether Defendant Officer Kehler was implementing an official policy during this incident, or whether he derogated from official practice.  However, the Court sees no reason to retain the official capacity claims against the remaining individual defendants.  Dismissal of the official capacity claims will serve the goal of streamlining briefing and the docket, and will also add much-needed clarity to the legal claims genuinely at contest in this litigation.  Accordingly, the official capacity claims will be dismissed with prejudice, save for the claim against Defendant Officer Kehler.

### E.      Supervisory liability claim

Plaintiffs bring a Section 1983 supervisory liability claim against Defendants Police Chief Kahley and the City of York.  (Doc. No. 1 ¶¶ 54-56.)  According to the complaint, Chief Kahley and the City of York had supervisory authority over Defendant Officer Kehler.  (Doc. No. 1 ¶ 56.)  Plaintiffs also allege that Kahley and the City,

> "either directed the conduct which resulted in the violation of [L.F.]'s federal rights as alleged; or had actual knowledge of Kehler's violation of [L.F.]'s federal rights and acquiesced in said violations; or with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the violation or had a policy of maintaining no policy where more policies were clearly needed."

(Doc. No. 1 ¶¶ 55-56.)  The City Defendants ask the Court to dismiss this claim, characterizing Plaintiffs' allegations as mere recitations of the elements of a supervisory liability claim.  (Doc.

No. 21 at 11-14.)

At the outset, the Court observes that the supervisory liability claim against the municipality is encompassed within Plaintiffs' municipal liability claim for failure to supervise, and that claim is discussed elsewhere in this memorandum.  See A.M. ex rel. J.M.K. v. Luzerne County Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004).  Properly conceived, a supervisory liability under Section 1983 is an individual capacity claim against a supervisor.[8]  Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).  An individual supervisor, such as a police chief, "may be personally liable . . . if he or she participated in violating the plaintiffs' rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations."  A.M. ex rel. J.M.K., 372 F.3d at 586.  Such liability requires a showing of proximate causation, so a plaintiff must "'demonstrate a plausible nexus' or 'affirmative link' between the directions and the specific deprivation of constitutional rights at issue.'"  Santiago, 629 F.3d at 130 (quoting Hedges v. Musco, 204 F.3d 109, 121 (3d Cir. 2000)).

The Court finds that Plaintiffs have not sufficiently plead personal participation by Defendant Chief Kahley in Defendant Officer Kehler's actions, and as a corollary, that Plaintiffs have not sufficiently pleaded proximate causation.  At no point in their complaint do Plaintiffs allege any specific action on the part of Defendant Chief Kahley, relying instead on recitations of

---

[8] Plaintiffs purport to bring a supervisory liability claim against Police Chief Kahley and the City of York, but to the extent that Plaintiffs lodge a claim against Chief Kahley in his official capacity for failure to supervise, that claim is dismissed as redundant to the municipal liability claim as discussed in Part III(C-D).  See Hafer v. Melo, 502 U.S. 21, 25 (1991).  While Chief Kahley may be a policymaker under Section 1983, any allegation based on Officer Kahley's status as a policymaker is encompassed within the municipal liability claim and cannot be properly categorized as a supervisory liability claim.  A.M. ex rel. J.M.K., 372 F.3d at 586.

the legal elements to state their claim.  (See e.g., Doc. No. 1 at 29) ("The force used in this incident by Kehler, under the supervision of Kahley and the City of York, was not reasonable in light of all the surrounding circumstances and was therefore excessive.")  For example, Plaintiffs allege that "Kahley . . . [was] aware or should have been aware . . . that additional training and instruction were necessary in the use of taser weapons by members of his Department before they were equipped with the weapons."  (Id. ¶ 26.)  Under contemporary pleading standards, this is insufficient to attribute Officer Kehler's actions to the Police Chief.  Accordingly, the Court will dismiss Plaintiffs' supervisory liability claim against Defendant Chief Kahley without prejudice.

### F.  Pennsylvania Constitutional claims

In addition to their federal claims, Plaintiffs bring state law claims for negligence and for violations of the unlawful search and seizure and excessive force proscriptions found in Article I, Section 8 of the Pennsylvania Constitution.  (Doc. No. 1 ¶¶ 64-68.)  Defendants seek dismissal of these claims, arguing that the negligence claims are barred by state law and that the Pennsylvania Constitution does not create private causes of action.  (Doc. No. 21 at 10.)  Plaintiffs have conceded that their negligence claims sounding in tort are barred by the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa. Stat. §§ 8541-8564,  (Doc. Nos. 22 at 11; 26 at 8), but Plaintiffs nevertheless urge the Court to not dismiss their state constitutional claims (Doc. No. 26 at 7).  According to Plaintiffs,

> "Defendant is correct in that up to this point a recovery of monetary damages has not yet been allowed for violations of the Pennsylvania Constitution, Plaintiff requests that this claim not be dismissed at this stage in that during the course of this litigation the Courts may finally recognize that there should be a recovery for damages for violations of the Pennsylvania Constitution."

Id.  The City Defendants cite Jones v. City of Phila., 890 A.2d 1188 (Pa. Commw. Ct. 2006)

(Jubelirer, J.), for the proposition that Article 1, Section 8 of the Pennsylvania Constitution

provides no monetary damages remedy.  (Doc. No. 21 at 10.)  In Jones, the Commonwealth

Court considered at length Article I, Section 8, and the question of whether that section

conferred a money damages cause of action.  Jones, 890 A.2d at 1192-1216.  The Jones court

determined that the Fourth Amendment to the United States Constitution sufficiently protected

the rights of individuals in the realm of excessive force, and that affording a state remedy would

be duplicative and unwarranted.  Id. at 1207-1216 ("Because the same test would be applied

here, to protect the same interest, under both Federal and State Constitutions, the protections are

coextensive . . . [so] there is no separate cause of action for monetary damages for the use of

excessive force in violation of Article I, Section 8 of the Pennsylvania Constitution.").  Because

there is no recognized money damages cause of action for excessive force under that section of

the Pennsylvania Constitution, the Court will dismiss that portion of Plaintiffs' complaint with

prejudice.[9]  However, should Pennsylvania law change during the course of this litigation,

Plaintiffs will be free to seek leave to amend their complaint to reflect that change.

### G.     Punitive damages

Finally, Plaintiffs seek punitive damages against all defendants in their complaint (Doc.

No. 1 ¶ 69(b)), and Defendants seek dismissal of the same except with regard to Defendant

---

[9] While the Jones court's holding reached only excessive force claims under Article I, Section 8, the Court is also satisfied that none of the other protections afforded by Article I, Section 8 may be vindicated by a suit for monetary damages.  See Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist., 442 F. App'x 681, 687 (3d Cir. 2011) ("No Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution.") (citing Jones, 890 A.2d at 1208).

Officer Kehler sued in his individual capacity (Doc. Nos. 15 ¶ 5(l), 19 ¶¶ 25-26).  Section 1983

does not permit punitive damages actions against municipal entities, including school boards.

See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981) ("[W]e hold that a

municipality is immune from punitive damages under 42 U.S.C. § 1983."); see also, Jackson v.

Dallas School Dist., 954 F. Supp. 2d 304, 314 (M.D. Pa. 2013) (applying City of Newport to a

school system at the district court level).  This proscription also extends to government

employees or agents sued in their official capacities.  See Brandon v. Holt, 469 U.S. 464, 471-

473 (1985).

The City of York and the school district are immune from punitive damages, as are all of

the individual defendants sued in their official capacities.  The only two defendants sued in their

individual capacities are Defendant Officer Kehler for excessive force and Defendant Chief

Kahley as Officer Kehler's supervisor.  The excessive force claim against Officer Kehler is not

before the Court, and neither is the punitive damages claim against him as an individual.  As

aforementioned, the Court will dismiss the supervisory liability claim against Defendant Chief

Kahley.  Consequently, the punitive damages claim against Defendant Chief Kahley will be

dismissed without prejudice,[10] whereas the punitive damages claims against the City of York, the

school district, Jim Rauhauser in his official capacity, and Darlene Freeman in her official

---

[10] In the Section 1983 context, a punitive damages claim requires a plaintiff to show that
a  defendant was "motivated by evil motive or intent," or that the defendant's conduct "involves
reckless or callous indifference to the federally protected rights of others."  Smith v. Wade, 461
U.S. 30, 56 (1983).  The Court finds that Plaintiffs' factual allegations do not support any
allegation that Defendant Chief Kahley's actions were the product of evil motive or callous
indifference.

capacity will be dismissed with prejudice.[11]

**IV.     CONCLUSION**

For the foregoing reasons, the Court will dismiss Counts III, IV, V, and VI of Plaintiffs' complaint and dismiss Count I of Plaintiffs' complaint in part.  Plaintiff will be granted leave to file an amended complaint within 21 days of this order to address the pleading deficiencies identified herein.  An order consistent with this memorandum follows.

---

[11] In light of the foregoing dismissals on other grounds, the Court will hold in abeyance determinations of qualified immunity.